Ethel COLVIN, Individually and as Administratrix of the Estate of John Colvin, Plaintiff,

Alfa Mutual Insurance Company, Plaintiff/Intervenor,

v.

ELLIS CONSTRUCTION COMPANY, INC., Gene Sherrod, Roger Gregory and Bobby Nichols, Defendants.

Civ. A. No. EC91–343–S–D.

United States District Court, N.D. Mississippi, E.D.

Dec. 9, 1993.

Wilbur O. Colom, Colom & Colom, Columbus, MS, for plaintiff.

Thomas A. Wicker, Holland, Ray & Upchurch, Tupelo, MS, for Alfa Mut. Ins. Co.

John W. Crowell, Gholson, Hicks, Nichols & Ward, Columbus, MS, for Gene Sherrod.

J. Tyson Graham, Graham & Segrest, Columbus, MS, for Roger Gregory.

Claude F. Clayton, Jr., Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for Ellis Const. Co., Inc.

Stephen M. Corban, Mitchell, Voge, Beasley & Corban, Tupelo, MS, for Bobby Nichols.

*MEMORANDUM OPINION GRANTING ELLIS CONSTRUCTION'S MOTION FOR SUMMARY JUDGMENT*

SENTER, Chief Judge.

This cause is before the court on the motion of the defendant, Ellis Construction Company, Inc. (hereinafter referred to as "Ellis Construction"), for summary judgment.

*Summary Judgment Standard*

The summary judgment standard is familiar and well settled. Summary judgment is appropriate only if the record reveals that there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c). The pleadings, depositions, admissions, answers to interrogatories, together with any affidavits, must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. and Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the nonmoving party. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). However, summary judgment is mandated after adequate discovery and upon proper motion against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

*Facts*

On or about November 12, 1991, John Colvin was killed in an accident on Highway 69 in Lowndes County, Mississippi, when his car was hit by a tractor-trailer unit driven by Bobby Nichols. The trailer portion of the vehicle was owned by Gene Sherrod. Although the tractor portion of the vehicle driven by Nichols was certified to Gary Dove, Roger Gregory had paid Gary Dove for the tractor and had taken possession of the tractor to use for parts. Gary Dove had signed the title in blank. Several months prior to the accident, Gregory had agreed to sell the 1980 GMC tractor "as is" to Sherrod for $500.00 down payment and a promissory note for $6,000.00. Sherrod did not have any money for the down payment. In August of 1991, Gregory allowed Sherrod to take possession of the vehicle and repair it. They agreed that once the tractor was roadworthy, Sherrod would sign the promissory note and Gregory would be paid from any income generated by the tractor. No money ever exchanged hands, nor did Gregory or Sherrod ever sign the paper work.

During this period, Gregory was employed as a foreman with Ellis Construction. In order to assist Sherrod in generating income with the tractor, Gregory asked Leon Ellis, president of Ellis Construction, whether there was any work for Sherrod. Gregory was told to contact the dispatcher. The morning of the accident, Ben Huguley, a dispatcher for Ellis Construction, told Gregory that extra trucks were needed at the Pickensville, Alabama, job site. Gregory and L.D. Wall went to Sherrod's home and told him about Ellis Construction needing extra trucks. At some point Bobby Nichols arrived and was instructed by L.D. Wall how to get to Ellis Construction's work site. Nichols had driven the tractor-trailer unit the previous day. Sherrod denies that Nichols was his employee or that he had instructed Nichols to return the day of the accident for work.

Nichols drove the tractor Gregory had agreed to sell to Sherrod, attached with a

trailer owned by Sherrod. The unit had no tag, inspection sticker, or insurance. Nichols followed an Ellis Construction truck to a gravel pit. After the truck was loaded, he drove to the work site and was directed where the gravel was to be dropped. Nichols told an employee of Ellis Construction that he was driving for Gene Sherrod. Nichols hauled seven or eight loads before he noticed that the tractor was running low on oil. Instead of getting another load of gravel, Nichols decided to nurse the tractor-trailer unit back to Sherrod's house. On the way back to Columbus, Nichols was involved in the accident with John Colvin.

Ellis Construction maintains that Bobby Nichols was not an employee, and accordingly, summary judgment is appropriate. Alternatively, if the court determines Nichols to be an employee, Ellis Construction argues that he was outside the scope of his employment and therefore it cannot be held vicariously liable for any of his alleged negligence. The plaintiff asserts that summary is improper since there remains a material issue of fact whether Ellis Construction had *de facto* right or *de jure* power to control the actions of Bobby Nichols, making it vicariously liable for his negligence.

## Discussion

Vicarious liability holds the master liable for the negligent acts of its servants committed while within the scope of employment. Since the master has the power to control the actions of its servants, it is then within the master's power to prevent tortious conduct. Additionally, since it is the master who benefits from the work related conduct of its servants, then it is the master who should be held liable for any ensuing torts.

The employer-employee relationship was the critical determining factor before vicarious liability attached. The Mississippi Supreme Court, in *W.J. Runyon & Son, Inc. v. Davis,* 605 So.2d 38 (Miss.1992), moved away from this and adopted the control test analysis. Although the *Runyon* Court disavowed the use of the factoring system to determine whether there exists an employer/employee relationship, and discouraged dependence on the independent contractor label, the Court affirmed the Circuit Court which had held that as a matter of law the tortfeasor was an employee of Runyon. The court looked strictly at whether the master had the capacity to control the situation from which the negligence is said to have arisen.

The right-to-control test is sound in theory and in practice. One who engages the services of another and holds the servant in a legal relationship subject to a right of control has practical power to prevent the servant from committing torts. The rule of *respondeat superior* gives the master incentive to do this. We have labeled "independent contractors" those we have found not under the master's right of control. Generally, such a person promises a certain output in exchange for the contract price. The master's concern is the finished product alone. Where the master may not supervise the inputs into this performance, he is per force not in a good position to prevent the contractor's torts and should not in justice be held for those torts absent independent negligence.

*Runyon,* 605 So.2d at 45 (internal citations omitted).

Previously, labeling the tortfeasor as an independent contractor would absolve the master of liability. In those factual situations where the court found the master to have the capacity to control the independent contractor, the court blurred the line and found the independent contractor to be an employee, thus making the employer vicariously liable. Instead of relying on factual nuance, which would have further constricted the definition of independent contractor and expanded the definition of employee, the *Runyon* court eliminated the distinction and sought continuity in the right-to-control test. In *Runyon,* the court reiterated that control was the motivation behind vicarious liability and set it as the determinative factor.

Where the accident **arises out of or in connection with work activities** the master had a *de jure* right or *de facto* power to control, or as a reasonable incident thereto, the master should be vicariously liable for the servant's defaults. This is no precise formula, nor is it susceptible of mechanical application. Over a range of

cases we see we have not shorn it of its shades of gray. Still, it is the better framing of the question, and an affirmative answer yields vicarious liability. A negative answer and the plaintiff must look to the tortfeasor alone.

*Runyon,* 605 So.2d at 46 (emphasis added).

■ Ellis Construction disavows any association with Nichols; most vehemently, him as an employee. Ellis Construction needed haulers. Nichols appeared with a truck to haul. The truck Nichols was driving was loaded with gravel, and he delivered the gravel to the construction site. Clearly, from the undisputed facts, Nichols was hired by Ellis Construction to haul gravel. Whether Nichols was an employee or an independent contractor is immaterial. The facts indicate that Ellis Construction had a *de facto* power and *de jure* right to control the actions associated with the hauling of gravel from the loading site to the construction site and back.

The pertinent issue is not so much whether Nichols was outside the scope of his employment, as whether he was outside Ellis Construction's scope of control. The implied employment between Nichols and Ellis Construction was to haul gravel from the pits to the construction site. From the point when Nichols drove into the gravel pit and was loaded by Ellis Construction personnel, until he chose to return to Columbus, he was within the right-to-control of Ellis Construction, and thus Ellis Construction could have been held vicariously liable for Nichols' alleged negligence. If the accident had occurred prior to being loaded, when Nichols was traveling to the loading site, then Ellis Construction could not be held liable, since it did not have the power or right to control Nichols' acts. It is a general rule that an employer is not liable for the acts of his employees going to and returning from work. *See Smith v. Anderson–Tulley Co.,* 608 F.Supp. 1143, 1146 (S.D.Miss.1985); *Luther McGill, Inc. v. Cook,* 306 So.2d 304, 306 (Miss.1975). Once Nichols chose to return home, not only did the employment relationship between Ellis Construction and Nichols terminate, but also Nichols would have been beyond Ellis Construction's right-to-control. From that point, Nichols' actions are his own

or within the right-to-control of another master.

Therefore, the defendant's motion for summary judgment is granted.