981 So.2d 1063 (2008)
Howard LANE, Appellant
v.
HARTSON-KENNEDY CABINET TOP COMPANY, Inc. and Royal Indemnity Company, Appellees.
No. 2006-WC-02137-COA.
Court of Appeals of Mississippi.
May 6, 2008.
*1065 James Kenneth Wetzel, Gulfport, Matthew Gordon Lyons, attorneys for appellant.
*1066 Stephanie Anne Taylor, attorney for appellees.
Before KING, C.J., ROBERTS and CARLTON, JJ.
KING, C.J., for the Court.
¶ 1. Howard Lane appeals the decision of the Harrison County Circuit Court that affirmed the Mississippi Workers' Compensation Commission's (Commission) denial of a claim for compensation under the Mississippi Workers' Compensation Act. Finding error, we reverse the judgment of the circuit court and remand this case back to the Mississippi Workers' Compensation Commission for a determination of benefits.

FACTS
¶ 2. On November 18, 2003, at approximately 3:45 p.m., Lane suffered serious injuries as a result of an automobile collision with a drunk driver. The collision occurred several miles away from Hartson-Kennedy Cabinet Top Co., Inc. (H.K.), while Lane was in his personal vehicle on his way home from H.K. to take a shower.
¶ 3. Lane was a truck driver for H.K. who drove what the parties termed a "dedicated route." Essentially, he drove two delivery routes during the week and deviated off of those two routes depending on which customers required deliveries to their businesses. Lane's typical work week began on Sunday. He would drive his personal vehicle from his home to H.K. Once he arrived at H.K., he would leave driving H.K.'s eighteen-wheeler on the first route that Sunday. Then, he would return to H.K. on Tuesday, after all deliveries had been made. He would normally arrive back at H.K. between 10:00 a.m. and noon.
¶ 4. After Lane's arrival back at H.K., the eighteen-wheeler would be loaded for the next route to begin later that day, normally at approximately 4:00 p.m. While the truck was being loaded, Lane would complete some paperwork and turn in his expense receipts from the previous delivery route. After turning in his expense receipts, Lane would be off duty during the time that his truck was being loaded, and he was free to run whatever personal errands he wished. He would return to H.K. once the truck was loaded and begin his second delivery route on Tuesday night. After he completed all the deliveries on the second route, he normally returned to H.K. on Thursday night. He would then be off duty Friday and Saturday. Lane would then resume the first delivery route on the following Sunday. After each delivery route, Lane would leave the eighteen-wheeler at H.K. when he was off duty and drive his personal vehicle.
¶ 5. While on the delivery route, both parties agreed that Lane was a traveling employee. He was considered on duty for all of the delivery route, with the exception of when he was sleeping. He usually slept in the sleeper berth in the cab of the eighteen-wheeler. Jay Curtis, Lane's supervisor, testified that on-duty time included making deliveries, unloading the truck for a customer, eating meals, and taking showers. Curtis further testified that normally Lane received thirty minutes to eat a meal and thirty minutes to take a shower. The showers were normally taken at truck stops, and the cost of five dollars per shower was reimbursed by H.K. upon Lane's completion of the delivery route.
¶ 6. On the day the accident occurred, Lane was late in returning to H.K. from his Sunday-to-Tuesday route, due to an extra delivery. In fact, he did not arrive back at H.K. until approximately 3:00 p.m. After Lane completed the various paperwork and turned in his expense receipts, *1067 he spoke with Curtis and inquired when his truck would be loaded and ready to begin the second delivery route. Curtis responded that the truck would be loaded by 6:00 p.m. Then, Lane and Curtis discussed what Lane should do during the time that the truck was being loaded. They discussed three different options: (1) go to a nearby truck stop and take a shower; (2) wait at H.K. for the load to be completed and take a shower once on the delivery route; or (3) go home and take a shower and then return to H.K. Curtis told Lane to go home and take a shower since it would be cheaper for the company because H.K. would not have to reimburse Lane for the shower taken at his home. However, if Lane went to the nearby truck stop, H.K. would have repaid Lane for the expense of the shower. Further, Curtis thought it was pointless for Lane to sit around H.K. waiting for his truck to be loaded. Therefore, Lane got in his personal vehicle and began his thirty-minute trip home. About ten minutes after he left H.K., his vehicle was struck head-on by a drunk driver. Lane received substantial injuries as a result of the collision.
¶ 7. On January 14, 2004, Lane filed a petition to controvert, alleging that he suffered a work-related accident from the collision. H.K. denied compensation. After a hearing was held, the administrative law judge found that Lane was not within the scope of his employment when the accident occurred. Therefore, he found that Lane was not entitled to workers' compensation benefits. The Commission affirmed the decision of the administrative law judge and adopted his findings. Lane then appealed to the Circuit Court of Harrison County. The circuit court affirmed the Commission's decision to deny Lane benefits.
¶ 8. Lane then timely instituted this appeal.

STANDARD OF REVIEW
¶ 9. In workers' compensation cases, the Commission is the ultimate fact-finder, and its decisions are accorded a deferential standard of review. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). Therefore, we will only reverse the decision of the Commission "where issues of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious." Duke ex rel. Duke v. Parker Hannifin Corp., 925 So.2d 893, 896(¶ 11) (Miss.Ct.App.2005) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 448(¶ 8) (Miss.Ct.App. 1999)).

ANALYSIS
¶ 10. Lane argues that the Commission erred when it found that he was not acting within the scope of his employment when he was struck by a drunk driver. The Commission found that Lane was not a traveling employee at the time the accident occurred. Further, the Commission found that the "going and coming" rule applied since Lane did not meet any of its exceptions.
¶ 11. Lane makes several arguments that can essentially be condensed to two issues. First, Lane alleges that he was a traveling employee for all of Tuesday. Second, Lane argues that he fits within one of the exceptions to the "going and coming" rule.
I. Whether Lane was a traveling employee at the time he was struck by a drunk driver.
¶ 12. "There is a long-standing rule in the law of workers' compensation that, in the case of an employee having a fixed place of employment, the employee and not the employer generally assumes *1068 the hazards associated with going to and from the place of employment." Hurdle and Son v. Holloway, 749 So.2d 342, 348(¶ 16) (Miss.Ct.App.1999). Therefore, injuries received while going to and coming from a job are generally not compensable under workers' compensation. Id. However, traveling employees are exempted from this rule. King v. Norrell Servs., Inc., 820 So.2d 692, 694(¶ 6) (Miss.Ct.App. 2000). Traveling employees are employees whose work takes them away from the employer's premises and are held to be "within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." Smith & Johnson, Inc. v. Eubanks, 374 So.2d 235, 237 (Miss.1979) (citation omitted). "A traveling employee is one who goes on a trip to further the business interests of their employer such as a traveling salesman or a person attending a business conference for the benefit of his employer." King, 820 So.2d at 694(¶ 6). Since traveling is central to a traveling employee's job, he or she faces a higher risk than an ordinary commuter. Id. "Therefore, a traveling employee's travel is deemed a work-related risk." Id.
¶ 13. In this case, Lane and H.K. agree that while Lane is on a delivery route, he is a traveling employee. However, H.K. argues that Lane's designation as a traveling employee ends when he returns to H.K. The Commission agreed with H.K. and cited Dependents of Roberts v. Holiday Parks, Inc., 260 So.2d 476, 478 (Miss. 1972). In Holiday Parks, Inc., the supreme court stated that an employee is a traveling employee from the "time he leaves his home base until he returns to his home base." Id. This means that while the employee is traveling to his "home base," he would be subject to the general "going and coming" rule. The Commission found that H.K. was Lane's home base. Holiday Parks, Inc., and the facts before us support H.K.'s position. Had Lane departed H.K. in the eighteen-wheeler on a delivery route, he clearly would have been within the scope of his employment as a traveling employee. However, that was not the case. After Lane returned to H.K., he would go home in his personal vehicle, without remuneration for the trip home. In addition, the eighteen-wheeler remained parked at H.K. After Lane had completed his delivery route, Lane never drove it home. On this particular occasion, Lane had completed his first delivery route, had gone off duty, and then left H.K. in his personal vehicle.
¶ 14. Clearly, there is sufficient evidence to support the Commission's decision that Lane was not a traveling employee at the time of the accident. Therefore, this allegation of error is without merit.
II. Whether Lane fits into one of the exceptions to the "going and coming" rule.
¶ 15. While Lane had reached his home base when he finished his delivery route, that does not necessarily mean that he was outside the scope of his employment when he drove home. It merely meant that he was akin to an ordinary employee working at a fixed place of employment. Therefore, his travel to and from his home would be considered outside the scope of his employment unless he met at least one of several exceptions to the general rule. If Lane met one of these exceptions, he would be entitled to the same treatment as a traveling employee; namely, his trip would be considered within the scope of his employment. These exceptions include:
(1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in connection with his employment at home; or (3) *1069 where the employee is injured by some hazard or danger which is inherent in the conditions along the route necessarily used by the employee; or (4) where the employer furnishes a hazardous route; or (5) where the injury results from a hazardous parking lot furnished by the employer; or (6) where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises; or (7) when the employee is on a special mission or errand for his employer, or where the employee is accommodating his employer in an emergency situation.
Duke, 925 So.2d at 896-97(¶ 12) (citations omitted). The employee has the burden of proving that one of these exceptions applies. Id. at 897(¶ 12) (citation omitted). However, doubtful cases must be resolved in favor of compensation in order to "fulfill the beneficent purposes of the statute." Id. at 897-98(¶ 15) (citing Marshall Durbin Cos. v. Warren, 633 So.2d 1006, 1010 (Miss.1994)).
¶ 16. Lane argues that he met his burden of proof as to three of the above exceptions: (1) he alleges that he was injured by a hazard inherent in the conditions along the route he was required to take home; (2) he alleges that he was accommodating his employer by going home and taking a shower, thereby saving the company money for the cost of a shower at a truck stop; and (3) he alleges that he performed a duty of employment, showering, while at home.
¶ 17. The Commission directly addressed his first allegation. It stated that "Mr. Lane was on a public highway and he had complete freedom to choose his route home." Lane argues that since he was a truck driver and spent a great deal of time driving, drunk drivers were a special hazard that he was required to face. While that may be true for truck drivers in general, Lane was not driving an eighteen-wheeler at the time and was subject to the same dangers of the road as any employee driving home from work. Therefore, the drunk driver was not a special hazard that would remove Lane from the "going and coming" rule.
¶ 18. As for the second allegation, Lane argues that he should fall within the last exception to the "going and coming" rule. He alleges that he was accommodating his employer by taking a shower at home. However, Lane fails to grasp the full definition of this exception. This particular definition is defined as "where the employee is accommodating his employer in an emergency situation." Id. at 896(¶ 12) (emphasis added). The exception was specifically discussed in Miller Transporters, Inc. v. Dependents of Seay, 350 So.2d 689, 691-92 (Miss.1977). In Miller Transporters, Inc., Seay was called in the middle of the night to haul a load of asphalt for his employer. Id. at 690. Seay left to get the load, and while on his way to his employer's premises, he fell asleep and veered off the road causing a fatal accident. Id. at 691. The Commission held, and the supreme court agreed, that there "was no emergency situation." Id. at 691-92. The supreme court held that there was no evidence presented that could have created an emergency situation. Id. at 691. Therefore, Seay could not fall under this particular exception. Id. In Lane's case, no evidence was adduced that an emergency situation existed. Therefore, Lane could not fall within this exception to the "going and coming" rule.
¶ 19. Lane's final allegation that he falls within an exception to the "going and coming" rule is that he was going to perform an employment duty at his home. *1070 When addressing this specific exception, the Commission stated:
Mr. Lane did not perform work duties at home. At the time of the accident, Mr. Lane was driving home on a two-hour break to tend to personal business. He said he intended to take a shower before leaving on his next assignment. His employer did not require him to take a shower before his next assignment.
¶ 20. It is undisputed that Lane was on his way home to take a shower prior to the accident occurring. There is one important aspect in this case that distinguishes it from ordinary cases. Lane was paid for the time he took showers while on the delivery routes. Further, he was reimbursed by H.K. for the costs to take these showers.
¶ 21. Lane testified that shortly before he left, he spoke with Curtis about three different options: (1) go to a nearby truck stop and take a shower; (2) wait at H.K. for the load to be completed and take a shower once on the delivery route; or (3) go home get a shower and then return to H.K. They discussed which option would be cheaper for H.K. Curtis testified that it was pointless to allow Lane to sit around while on duty waiting a few hours for his truck to be loaded. Further, he did not think it was prudent for Lane to be paid while he was taking a shower at a nearby truck stop. Therefore, he told Lane to go home and get a shower. By going home to take a shower, Lane would save H.K. the price of a shower at a truck stop and the pay that Lane would have received for his allotted thirty minutes for taking a shower.
¶ 22. Lane did testify that on a normal Tuesday he was allowed to do pretty much whatever he wanted to do while he was off duty. However, he would have around six hours off-duty time on those days. On this particular day, he did not arrive back at H.K. until 3:00 p.m. Therefore, Lane had less than three hours to go off duty and then return to begin his second delivery route. He would have spent one hour just on his round trip to his home and back to H.K. That, coupled with the fact that Curtis told Lane to go home, negates the idea that Lane was free to do whatever he wanted on the day of the accident.
¶ 23. H.K. received an additional benefit from Lane leaving to shower at home. When Curtis told lane to go off duty, Lane was further saving H.K. money. Lane testified in his deposition that he occasionally waited at H.K. after he had completed a delivery and helped the dock workers load the eighteen-wheeler. During this period of time, Lane was paid for being on duty. When Curtis told Lane to go off duty, H.K. received the benefit of not having to pay Lane for just waiting on his load to be completed.
¶ 24. While a shower is generally not an employment duty, Lane's situation was not normal. By traveling home, Lane followed the direction of his employer and attempted to save the company money by taking a shower at home. The Commission recognized that while Lane was on a delivery route, he was normally paid for the time he took a shower and reimbursed for the costs of the showers. However, the Commission failed to take this into account when it performed its analysis of the exceptions to the "going and coming" rule. Therefore, we find that there was not substantial evidence to support the Commission's conclusion that the accident did not fit within any of the exceptions to the "going and coming" rule. Due to the specific facts of this case, Lane met the second exception to the "going and coming" rule by performing an employment duty while at home. Therefore, we reverse the judgment of the circuit court and remand this case back to the Mississippi Workers' Compensation Commission for a determination of benefits.
*1071 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND THE CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE AND MYERS, P.JJ., IRVING, CHANDLER AND ROBERTS, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, BARNES AND ISHEE, JJ.
CARLTON, J., Dissenting.
¶ 26. Our standard of review is limited in workers' compensation cases. As the majority notes, this Court defers to the Commission, which is the ultimate fact-finder. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). Because our review is limited, this Court "will only reverse the Commission's rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious." Casino Magic v. Nelson, 958 So.2d 224, 228(¶ 13) (Miss.Ct.App.2007) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 448(¶ 8) (Miss.Ct. App.1999)). Because of our limited standard of review, and because I would not find that the Commission misapplied the law or rendered an arbitrary or capricious opinion, I respectfully dissent.
¶ 27. The Commission affirmed the decision of the administrative law judge, whose written opinion applies the particular facts of this case to the relevant law. Despite the Commission's findings, the majority finds Lane's activities, on that day, fall into the second exception of the "going and coming" rule. See Duke ex rel. Duke v. Parker Hannifin Corp., 925 So.2d 893, 896-97(¶ 12) (Miss.Ct.App.2005) (citations omitted). The majority finds that Lane's going off duty, leaving work, and traveling in his personal vehicle to his home to attend to his personal business amounted to performance of a duty in connection with his employment. Lane was off duty and off his employer's premises at the time of the accident.
¶ 28. I cannot agree with the majority's finding that the employer received an additional benefit from having Lane go off duty to go home to shower. The administrative law judge found that showering was not part of Lane's job duties. Further, Lane was free to engage in whatever activity he chose during his break from work, including running his personal errands or whatever else he chose to do. I cannot agree that being off duty, thereby saving his employer money, acts as a benefit to the employer such that workers' compensation benefits are necessary. Off-duty employees are, by virtue of being off duty, saving money for their employers. That should not be considered an added benefit to the employer for the purpose of workers' compensation liability. There are instances where an off-duty employee might be entitled to benefits. Lane's case, though tragic, does not fall within any of the exceptions to the "going and coming" rule enumerated in the majority opinion.
¶ 29. The administrative law judge, whose decision was affirmed by the Commission, made detailed findings of fact. Her analysis was thorough, addressing the "going and coming" rule and its exceptions. Remembering this Court's deferential standard of review in workers' compensation cases, I would affirm the findings of the Commission.
GRIFFIS, BARNES AND ISHEE, JJ., JOIN THIS OPINION.