# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-WC-01396-COA

**ROB HARRIS**                                                              **APPELLANT**

**v.**

**STONE COUNTY BOARD OF SUPERVISORS**                    **APPELLEES**
**AND MISSISSIPPI PUBLIC ENTITY WC TRUST**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2017 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | YANCY B. BURNS |
| ATTORNEY FOR APPELLEE: | WALTER J. EADES |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND RENDERED - 09/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     In this appeal we must determine whether the Mississippi Workers' Compensation Commission (Commission) erred when it found that Rob Harris was entitled to permanent partial disability benefits rather than permanent total disability benefits following a work-related injury to his left lower extremity.  Finding the Commission's decision was not supported by substantial evidence, we reverse the Commission's decision, and reinstate the decision of the Administrative Judge (AJ).

### FACTS AND PROCEDURAL HISTORY

¶2.     On May 29, 2012, Harris suffered a left-knee injury while at work with Stone County. Prior to the work-related injury, Harris had been employed by the County for eleven years

cutting grass, keeping up the county buildings, and performing custodial duties. After the injury, Harris underwent multiple surgeries to his left leg and reached maximum medical improvement (MMI) in August 2016. Harris underwent a functional capacity exam (FCE) that showed he was "able to work full time and perform [duties while] sitting frequently and standing occasionally throughout the workday." The FCE recommended that Harris receive a thirty-one percent impairment rating to the left lower extremity. These results and recommendations were adopted by Dr. Robert Dews, Harris's treating physician, at the time he opined Harris had reached MMI.

¶3.    After reaching MMI, Harris inquired with the County about the possibility of employment that was less physically demanding. The County responded that there were no positions available within Harris's physical limitations. Harris was fifty years old, had earned a high-school diploma, but had no vocational training or clerical or office-job experience. Harris's work history prior to employment for the County included working on an assembly line at a plywood plant and cutting grass and custodial duties at a water park in Wiggins, Mississippi.

¶4.    In an "Initial Vocational Evaluation and Labor Market Survey" dated November 15, 2016, Kathy Smith, a certified vocational-rehabilitation counselor, opined on behalf of the County that Harris had "the ability to be employed in a very limited number of occupations in and around his current geographical area." Kathy identified seven "potential employment opportunities" paying between $7.25 and $10.00 per hour that were sedentary in nature for which Harris could apply. One month later, Kathy identified another five employment

opportunities in a report dated December 14, 2016. Harris applied for these positions from the report, as well as a several other positions, and registered with the WIN Job Center, but he was unable to secure employment through these efforts. Harris's vocational expert, Ronnie Smith, testified by deposition that Harris would have a difficult time securing employment.

¶5.     The County admitted that Harris had sustained a compensable injury. At a hearing before the AJ, the parties stipulated that (1) Harris sustained a work-related injury to his left knee on or about May 29, 2012; (2) his average weekly wage at the time of the work-related injury was $469.20; (3) there were no issues remaining to be decided regarding the reasonableness and necessity of the medical treatment Harris had received; (4) there were no remaining issues to be decided regarding the existence and extent of temporary disability benefits; and (5) Harris reached MMI on August 18, 2016. The only issue before the AJ was "the existence and extent of permanent disability attributable to Harris'[s] work-related injury." The AJ determined that Harris was permanently and totally disabled and entitled to permanent total disability benefits pursuant to Mississippi Code Annotated section 71-3-17(a) (Rev. 2011) of $312.82 beginning May 30, 2012, and continuing for a period of 450 weeks as compensation for Harris's work-related disability.

¶6.     The County appealed the decision to the Commission, which reversed the AJ's finding that Harris was permanently and totally disabled and instead found that Harris was entitled to permanent partial disability benefits under section 71-3-17(c) of $312.82 beginning August 18, 2016, and continuing for a period of 175 weeks. Harris now appeals, arguing that

(1) the County failed to rebut his prima facie showing of permanent total disability, and (2) he met his burden to establish permanent total disability. We address Harris's issues in turn and include additional facts as relevant to the discussion.

## STANDARD OF REVIEW

¶7.     "It is well-settled law in this State that the Commission is the ultimate finder of fact in workers' compensation cases, and where substantial credible evidence supports the Commission's decision, then, absent an error of law, the decision must stand without judicial interference." *Logan v. Klaussner Furniture Corp.*, 238 So. 3d 1134, 1138 (¶11) (Miss. 2018). However, this Court will not hesitate to reverse the Commission's decision "where findings of facts are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious." *Bennett v. Miss. State Dep't of Health*, 211 So. 3d 773, 776 (¶8) (Miss. Ct. App. 2016).

## DISCUSSION

¶8.     Harris claims that the Commission erred when it reversed the AJ's finding that he was permanently totally disabled, and instead found that Harris suffered permanent partial loss to a scheduled member. Specifically, he argues that the County failed to rebut his prima facie showing of permanent total disability and further argues he established he was permanently totally disabled.

¶9.     "A worker injured in the course and scope of [his] employment is entitled to compensation to the extent that he has been incapacitated to earn wages." *Lifestyle Furnishings v. Tollison*, 985 So. 2d 352, 359 (¶18) (Miss. Ct. App. 2008) (internal quotation

4

mark omitted) (citing *Marshall Durbin Inc. v. Hall*, 490 So. 2d 877, 880 (Miss. 1986)). The claimant bears the burden of proving the existence of a disability and its extent. *Id*. at (¶21). "The order of proof is subject to a burden-shifting scheme." *Id.*

¶10.    "To establish a prima facie case for permanent total disability, the claimant has the burden to show he has sought and been unable to find work in the same or other employment." *Howard Indus. Inc. v. Satcher*, 183 So. 3d 907, 912 (¶14) (Miss. Ct. App. 2016) (internal quotation marks omitted). "The claimant can also establish a prima facie case for total disability if, after reaching MMI, the claimant reports back to the employer for work and the employer refuses to reinstate or rehire him." *Id*. (internal quotation mark omitted).

¶11.    In the present case, it is undisputed by the parties that Harris suffered a compensable work-related injury to his left lower extremity on May 29, 2012. The parties stipulated that Harris reached MMI on August 18, 2016. The record shows that after reaching MMI, Harris inquired with the County about the possibility of employment that was less physically demanding. The County responded that there were no positions available within Harris's physical limitations. As such, Harris established a prima facie case of total disability. At this point, the burden then shifted to the County to rebut the presumption of total disability by showing that Harris only suffered a partial disability or no loss of wage-earning capacity. *Lifestyle Furnishings*, 985 So. 2d at 360 (¶21).

¶12.    The Commission found that the County successfully rebutted the presumption of total disability, citing that Harris "was released to sedentary duty for up to eight (8) hours per day," and "the vocational expert testimony identifying several jobs which [Harris] is qualified

5

to perform that earn $7.25 to $10.00 per hour." This evidence does not, however, support a finding that the County successfully rebutted the prima facie showing of total disability, but rather, supports Harris's contention that he sustained permanent total disability. We discuss the issue below.

¶13. Once a claimant makes a prima facie showing of total disability as Harris did, the burden shifts to the employer to rebut or refute the claimant's evidence. *Lott v. Hudspeth Ctr.*, 26 So. 3d 1044, 1049 (¶15) (Miss. 2010). Rebuttal is accomplished "by showing that the claimant only suffered a partial disability or no loss of wage-earning capacity." *Lifestyle Furnishings*, 985 So. 2d at 360 (¶22). "The employer may present evidence (if any) showing that the claimant's efforts to obtain other employment were a mere sham, or less than reasonable, or without proper diligence." *Id.* "The employer may accomplish this by setting forth facts showing that suitable work was available to the claimant." *Id.* "Factors which should be considered in determining loss of wage-earning capacity include the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances." *Id.* at (¶25) (internal quotation mark omitted).

> In assessing the reasonableness of a claimant's job search, relevant factors for consideration are: the economic and industrial aspects of the local community, the jobs available in the community and surrounding area, the claimant's general educational background, including work skills, and the particular nature of the disability for which compensation is sought.

*Id.* (internal quotation mark omitted).

¶14. The record showed that Harris was fifty years old with no vocational training past high

6

school. His entire employment history was limited to custodial and maintenance work, including with the County for the past eleven years. It is undisputed that due to Harris's work-related injury, he was unable to return to the same type of employment he had previously occupied. Harris applied for all of the jobs listed by the County's vocational expert, as well as other jobs, and was not hired. Additionally, all of the jobs listed by the County's vocational expert required clerical or office skills, which the evidence showed Harris did not possess. The range of pay for these potential employment opportunities, which Harris did not qualify for by education or training, was less than his pre-injury earnings, even at the highest end of the range. The County's vocational expert admitted that Harris's ability to be employed in and around his geographical area was very limited and that he should "participate in retraining or further education to better qualify for sedentary employment." Harris's vocational expert opined that it was unlikely that Harris could secure employment. The medical testimony showed that Harris had sustained permanent impairment with Dr. Dews opining Harris would "no longer be able to be employed in any sort of long-term job that would require any significant physical demands."

¶15. We find that the Commission's decision that the County rebutted the prima facie showing of total disability was not supported by substantial evidence in the record. Further, there is not substantial evidence in the record to support a finding that Harris suffered only a permanent partial disability or no loss of wage-earning capacity. As such, the Commission's decision is reversed, and the AJ's decision, which was supported by substantial evidence, is reinstated.

¶16.	**REVERSED AND RENDERED.**

	**IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**